RICHARD P. MORGAN *et al.*

*v.*

JAMES H. ROBERTS.

| | |
|---|---|
| 38 | 65 |
| 127 | 550 |
| 38 | 65 |
| 29a | 44 |
| 30a | 327 |
| 38 | 65 |
| 79a | 205 |
| 38 | 65 |
| 85a | 292 |
| 38 | 65 |
| 187 | 9388 |

1.  JURISDICTION IN CHANCERY—*in matters of trust—and herein, when a trust arises.*  Where an attorney engages to institute and prosecute a suit for a stipulated per centage out of the money or property realized thereby, if his client assigns the claim which was the foundation of the suit to a creditor who takes the claim with express reference to the rights of the attorney and with the understanding that he shall pay the fees of the attorney before applying any of the proceeds to his own debt, a trust is thereby created and a duty imposed upon the assignee to satisfy the prior claim of the attorney; and in such a case, indeed in all cases of trust, the jurisdiction of a court of equity is complete to compel its execution.

2.  SAME—*having acquired jurisdiction, the whole case will be heard.*  And when such court has obtained jurisdiction the whole case is before it, and if the claim of a party to the priority in the trust fund is dependent on a condition, the court can and must determine whether the condition has been performed, or the party discharged therefrom.

3.  Hence it was proper in this case for the court to determine whether or not the attorney had performed his engagement, and in doing so the court would necessarily be obliged to put a construction upon the contract of retainer.

4.  CONSTRUCTION OF CONTRACTS—*a contract of retainer* of an attorney at law is construed in this case.

5.  ATTORNEYS—*abandonment of a cause—measure of recovery for services.*  Where attorneys who are employed under a special contract to prosecute a suit, abandon the cause before its termination, they are thereby deprived of any claim under the contract, and must be left to recover such fees and compensation as they are reasonably entitled to on the basis of a *quantum meruit.*

6.  ATTORNEY'S LIEN—*how lost.*  And by abandoning their contract the attorneys would lose whatever lien upon the proceeds of the suit they might have had under its provisions.

7.  ATTORNEY—*can not delegate his authority.*  When a party engages the services of a particular lawyer, or of an association of lawyers, he is entitled to the services of every one of them, and if one abandons the retainer with the assent of the others, express or implied, or they attempt to supply his place with another attorney of equal or superior qualifications, it will be no performance of the contract.  It is a personal duty and trust which can not be delegated or performed by another.

8. SAME—*employment by client of additional counsel, no ground for abandon-ment by those first employed.* Something depends on the manner in which such a thing is done, but in general, it is a great advantage to have as an associate, no matter how distinguished the attorney first retained may be, another no less distinguished; and the employment of additional counsel by the client will not, necessarily, afford a justification to the attorney first retained to abandon the case.

9. WITNESS—COMPETENCY—*attorney as a witness—indecency of the practice.* It seems not to be contrary to any statute, or to any maxim of the common law, to make the attorney in a cause a witness in the cause he is managing.

10. This is a matter which appeals to the professional pride of an attorney, and his sense of his true position and duty, and however indecent the practice may be, there is no law to prevent it. All the courts can do is to discountenance it, and when the testimony of the attorney is indispensable, to recommend to him to withdraw from the cause.

WRIT OF ERROR to the Superior Court of Chicago.

A full statement of the case will be found in the opinion of the court.

Messrs. ARRINGTON and DENT, for the plaintiffs in error.

Mr. S. B. GOOKINS, for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The question arising upon this record is mainly as to the proper construction of the contract made by the parties to this suit, and the alleged abandonment of the same.

It appears from the testimony, that Morgan had been a large contractor with the Peoria and Oquawka Railroad Company, out of which, as he claimed, heavy damages had accrued to him, both for estimates on the work he had performed, and on account of the prospective profits he would have made on the work, if he had not been discharged by the Company.

This being the position of Morgan, he, on the eleventh day of October, 1856, entered into a contract with the defendants in error then counselors at law, of the following purport:

"Memorandum of a retainer by R. P. Morgan and P. W. Peckham, of Louis M. Andrick, and also of Blackwell, Thomas and Roberts, this eleventh day of October, 1856.

The former, Messrs. Morgan and Peckham, are to pay the said Andrick twenty-five dollars on or before the 15th inst., and one hundred and twenty-five dollars within ten days from this date, and one hundred dollars by the close of the present term of the United States Circuit Court for the Northern District of Illinois. The said Morgan and Peckham are to pay an equal amount, at the same periods, to Blackwell, Thomas and Roberts. The said Andrick, and the said Blackwell, Thomas and Roberts, severally engage themselves to institute and prosecute with diligence, a suit for a claim (in the said court during this term, so if possible to bring it to a judgment) against the Peoria and Oquawka Railroad Company for the estimates made to said R. P. Morgan. If the above respective two hundred and fifty dollars are not paid at the said periods, then an additional two hundred and fifty dollars is to be paid to the said Andrick, and the said Blackwell, Thomas and Roberts, or either of them, as there may be default so made (by) the one or the other law concern, as liquidated and fixed damages. If any further professional services shall be necessary in the said proceeding after judgment, in order to make the amount recovered, the said Morgan and the said Peckham engage to employ the said parties as above, and to pay them an additional two hundred and fifty dollars each, that is to say, five hundred dollars in all of such additional sum. The said Morgan and Peckham also engage to employ the above parties in any subsequent litigation growing out of the said Morgan contract with said Company, and also in any litigation with Iroquois County in regard to the payment of certain coupons held against said County by said Morgan and Peckham, or either of them; provided there can be an agreement between the parties as to the amount of fees and the time of payment of them."

This agreement is dated October 11, 1856, and signed by

the firm of Blackwell, Thomas & Roberts, by Louis M. Andrick, and by R. P. Morgan and Peckham. Peckham became a party to this agreement to employ these gentlemen as counsel, because he had purchased an interest of one-third in the contract.

It seems these counselors advised that two suits should be brought, one for the estimates on the work done by Morgan, and the other for prospective profits which Morgan might have made, if he had not been prevented by the Company from completing the contract. The above contract, it will be seen, has reference alone to the suit upon the estimates.

The suit for the estimates was instituted about the 13th day of October, 1856, and that for prospective profits was commenced on the 19th of the same month.

Whilst these suits were pending, the one in debt for the estimates, and the other in covenant for prospective profits as arising out of the contract, in November, 1856, demurrers were filed in each case, and on argument the court held that the causes of action should be joined in one suit, and accordingly, these attorneys obtained leave to commence an action of assumpsit, or rather to convert their actions of debt, and of covenant into an action of assumpsit, on payment of all costs then incurred, and to dismiss the actions of debt and of covenant.

Pending this action of covenant, another contract of retainer was entered into between these parties on the 21st of October, 1856, as follows: The said Andrick and the said firm are respectively to conduct the suit now instituted in the Circuit Court of the United States for the Northern District of Illinois, in the name of the said Morgan against the Peoria and Oquawka Railroad Company, for a violation of the construction contract between him and the said P. & O. R. R. Co., being an action of covenant commenced on or about the nineteenth instant. The said suit is to be conducted to its final termination unless the cause of action shall be compromised by the said Morgan, and the said Andrick and the said firm are

to be paid by the said Morgan, out of the moneys or property, or both, realized, each, five (5) per cent. of the whole amount of the moneys or property, or both, realized, making in the whole ten (10) per cent. on all the moneys or property, or both moneys and property, in any way realized. This is to be paid whether the cause be compromised, sold, assigned or transferred to any other party or parties, or settled. In the event of a sale, assignment or transfer of the claim, the said Andrick and the said firm are to be paid the aforesaid per cent. only on the amount of the consideration money or property, or both, over and above the estimates already sued on by said Morgan, that is, if the said estimates shall be included in such sale, assignment or transfer; otherwise the said per cent. is to be upon the whole amount as aforesaid.

Before the trial of the suit, and before the contract of October 21, the Railroad Company paid on Morgan's order, twenty-five thousand five hundred and fifty-four dollars on his claim.

On the 26th of April, 1857, the cause, then known as an action of assumpsit, was tried, and a verdict found for Morgan of forty-seven thousand four hundred and thirty-six dollars. By agreement of the parties a judgment was rendered on this verdict, with the understanding that it should stand as a security, the court at the same time awarding a new trial. In the following October another trial was had, and a verdict found for Morgan for fifty thousand dollars, which the court also set aside. On the final trial in September, 1858, there was a verdict and judgment for Morgan for fifty thousand dollars.

An execution issued upon this judgment, which was returned not satisfied. About March, 1857, Morgan and Peckham, the plaintiffs in error, made an assignment of their claim to one Dennis Beach, he having notice of the equitable rights of defendants in error, if any they have. One Robinson also claimed to be an assignee of Morgan on the 4th of February, 1860, subject to all other just claims.

In December, 1858, Morgan, Peckham and Beach, filed their bill in the McLean Circuit Court, against the Railroad

Company and others, to obtain satisfaction of the judgment, and the court, by its decree of September 11, 1860, established the rights of the complainants, and appointed William W. Orme as receiver, and directed him to pay over certain receipts raising out of the operation of the · Railroad, to Beach and Peckham, to satisfy the money due on the judgment.

At this stage of the business the defendants in error filed their bill of complaint setting up these contracts of retainer, alleging that they entered upon the performance of their duties under these retainers and faithfully rendered their professional attention and services. That during all the progress of such litigation, defendants in error, with Andrick, faithfully performed all the duties devolving on them under the contract, but after setting aside the second verdict, Morgan and Peckham, without any just cause or reason, withdrew the case from the care and management of defendants in error and Andrick, and refrained from having or holding any intercourse with them in respect to it, and placed the business in the hands of other attorneys, to the exclusion of defendants in error, against their will and without their consent, the said firm being at all times ready and willing and desirous to continue its professional services therein according to their retainer and agreement, and to conduct the case to its final issue. They claim that the effect of the agreement of retainer was to create a specific lien in favor of this firm upon the demand or claim in litigation and the proceeds of it, for five per cent. of the amount which might be realized thereon, with interest, and they accordingly claimed $1,277 77, or five per cent. of the $25,554, together with interest thereon, and also $2,500, being five per cent. on the amount of the judgment, with interest from the date of the same, insisting that the whole should be paid out of the moneys which should be realized on the judgment. That the assignment of Morgan and Peckham to Beach, was subject to the prior equity of defendants in error. That any assignment of the judgment by Morgan to Beach and Peckham, as pretended, was without any *bona fide* consideration actually paid,

and Beach and Peckham at the time of taking it, had full notice of the equitable rights of defendants, and that Robinson, who claimed to have become an assignee of Morgan February 4th, 1860, subject to all other just rights and claims, did not acquire any interest except such as would be subject to their prior rights and equity. They then set up the decree of the McLean Circuit Court, establishing the rights of Morgan, Peckham and Beach, and the appointment of Orme as Receiver, and then allege that Beach, Peckham and Morgan designed, and were endeavoring in these proceedings to obtain possession of the whole amount due from the railroad company, and to exclude defendants in error from the benefit thereof, leaving them without any compensation for their services under the retainer. That the railroad company and Morgan and Peckham were wholly insolvent, and Beach was a non-resident, and by reason of such insolvency and non-residence the complainants were without adequate remedy at law, and would lose the money due them if it should be obtained by Morgan, Peckham, Beach and Robinson, or any of them. The prayer is for an injunction against the payment to these parties, or to either of them, of any of the moneys so claimed by defendants in error, and that Orme or whosoever might have the custody of such moneys, should be decreed to pay over to them the amount due them with interest, &c., and that their right should be established as a first lien on the proceeds of the recovery. An injunction was granted for four thousand and five hundred dollars.

After the answer of all the defendants was filed, generally denying the material allegations of the bill, all the equities set up therein, but which is not necessary now to be particularly noticed, complainants filed a supplemental bill, setting forth the original and the proceedings under it, and alleging that Ezra M. Prince, a Special Master in Chancery and Receiver, had succeeded Orme in his trust as Receiver, and that on or about January 11, 1864, the money due upon said judgment in favor of Morgan, and the decree of September 11, 1860, were

fully paid by the L. P. and B. R. R. Co., formerly the Peoria and Oquawka Railroad Company, a part thereof to Beach and Peckham, and the residue thereof, $47,000, by depositing with the United States Trust Company, in the City of New York, five-twenty bonds of the United States, payable or deliverable to Prince, as such Special Master, upon the order of the Circuit Court of Macon County, to which court the venue in the cause wherein the decree was rendered, was transferred.

They allege that although this payment was without their knowledge or consent, and in violation of the injunction, they elected to ratify and confirm, and claim the benefit of the receipt of the $47,000 in these bonds in lieu of money and in discharge of so much of the judgment and decree as was due in pursuance of an agreement between Peckham and Beach and the L. P. & B. R. R. Co. That the bonds were nine per cent. above par, and increasing in value as the interest on them approached maturity, the coupons being payable in gold, and that the amount due them should be paid in these bonds at par, as they were so received—that the funds invested in these bonds to the amount of their claim equitably belonged to them, and they were entitled to its increase.

This bill called for an answer by Prince, and by Morgan, Peckham and Beach, and prayed an injunction requiring Prince to hold, subject to the order of the court, forty-five hundred dollars at par of these bonds, until further order, and that on a final hearing, he should be decreed to pay and deliver to them, out of the money and bonds in his hands as such Special Master, the full amount found to be due them, and for general relief.

This bill was taken for confessed against all the defendants except Peckham, for want of an answer, and the original and supplemental bills were taken for confessed as to Prince and Robinson.

Peckham, in his answer, denies most of the material allegations of the bill—avers that to recover these moneys, he had to expend ten thousand dollars—that the commencement and

prosecution of the suit in chancery in the McLean Circuit Court was necessary to recover the amount of the judgment, as was also the interpleader in a suit in chancery in New York City, commenced by William H. Osborne, by which interpleader the money was finally obtained—that the necessary expenditures for counsel fees alone, in the suit in McLean County, was over four thousand dollars, and in the matter of the interpleader was over fifteen hundred dollars, and to recover the final judgment in the United States Circuit Court, was over fourteen hundred dollars for services of other counsel after Andrick, Blackwell, Thomas and Roberts had abandoned the suit—that in order to collect this judgment it became necessary for him and Beach, in 1863, to appear and interplead in a suit then pending in United States Court, wherein one Lamar and others were complainants, and the P. & O. R. R. Co., and others, were defendants, by which interpleader the payment of the money was effected—that he expended eight hundred and seventy-five dollars for the necessary services of counsel in this suit—that if complainants should, in any manner, appear to be entitled to any part of the money so collected, which he denies, then one-half the amount of all these expenses should be deducted from their claim.

To this answer complainants put in a replication.

In Peckham's answer to the original bill he stated that three hundred dollars had been paid these attorneys, Andrick and these defendants in error, on the contract of October 11, prior to the dismissal of the two suits which had been commenced in the United States Circuit Court, and he complained of being injured by such dismissal not only in respect to having paid this three hundred dollars without any benefit, but in the accrual of costs for the attendance of witnesses, their traveling expenses, board, &c., in preparing for trial, the expenses of all which amounted to one thousand dollars, and further complained of the danger of liens being given by the Railroad Company, of which these attorneys had been apprised before the suits were commenced—that under these circumstances

6—38TH ILL.

these attorneys proposed, if their receipts for the three hundred dollars should be surrendered, and two hundred dollars more paid, the agreement of October 11 should be considered as regulating their fee in the then suit in assumpsit, whereupon, he alleges, the receipts were returned, and the sum of two hundred dollars was paid and receipted for upon the agreement, and he believed that the agreement was revived only by such mutual consent, and that the agreement of October 21, relating to the action of covenant, was no longer effectual.    He denies the allegation as to the payment of $25,554, and states that the first verdict rendered on the 26th of April, 1857, for the sum of $47,436 in the action of assumpsit, was less than was due on the estimates, and he insisted that the motion for a new trial should be allowed on condition that a judgment should be entered on the verdict to stand as security, having learned there was a serious question whether a judgment could be properly rendered on the verdict, and also that the Road was about to be encumbered by mortgage, so that a further judgment would be worthless.    He avers that these attorneys went to trial the second time without having perfected the issues or amended the pleadings, though invited so to do by the Judge presiding, and that the subsequent verdict for $50,000 was set aside for defective pleadings—that up to this period the business had been conducted by Mr. Blackwell and Andrick, the former being leading counsel—that the motion to set aside the second verdict was frequently postponed to accommodate Mr. Blackwell, and while it was pending, he, Peckham, applied two or three times a week, to Blackwell, to argue it, which he delayed and utterly refused to do, while the court and opposite counsel were all this time ready to dispose of it—that he applied to the other members of the firm to argue the motion, and they replied, it was arranged between them that Blackwell should argue it, and finally, Thomas and Andrick did promise to have the motion disposed of, and the motion was sustained on account of defects in the papers and other errors and the gross carelessness and negligence of the

counsel in conducting the suit—that from thenceforth, January 5, 1858, until the 22d of the following May, the defendants in error and Andrick, neglected and refused to amend the papers, or to take any steps necessary to prepare the case for trial, and other counsel being employed, they found the papers wrong and had to prepare them over again, *de novo.* He denies that defendants in error, with Andrick, gave due attention to the cause, and alleges that from the commencement of the litigation Blackwell was addicted to intemperate habits, which prevented him from giving proper attention, and caused him to leave the preparation of the papers and the management of the case to Andrick, without proper examination on his part when the latter was incompetent fitly to attend to it without direction, as defendants in error well knew when they were retained, but which defendant did not know—that they were guilty of gross carelessness, unskillfulness and unprofessional conduct in the management of the business—that the agreement of October 21 did not create a specific lien, but was void as having been obtained by fraud, &c—that if it ever was binding, it ceased to be so by consent and agreement, and because the action of covenant was terminated without any recovery in it. He admits that he and Morgan assigned a portion of the claim to Beach as security, and that on the 11th of November, Morgan assigned both the judgments for $50,000 and $47,000 to Beach and himself for a *bona fide* consideration paid before and at that time, without any knowledge on their part that the complainants claimed any rights or equities therein— admits the alleged assignment to Robinson, if one was made, was invalid. He alleges that by reason of the neglect, ignorance, default and fraud of the complainants and Andrick in the management of the case, he was damnified to the amount of ten thousand dollars. He denies that complainants and Andrick were discharged, or that other counsel were employed until after defendants in error and Andrick abandoned the action of assumpsit, and denies that they are entitled to any compensation. Attached to this answer is the agreement

of October 11, 1856, with receipts thereon, dated November 27, 1856, for the $500 therein specified.

Morgan's answer was the same as Peckham's, in substance.

Beach, in his answer, refers to the bill and proceedings in the McLean Circuit Court, in which the decree of September 11, 1860, was made, and denies all knowledge of the alleged retainer of October 21, and denies, if existing, that it has any application to the suit in which Morgan recovered the judgment against the Peoria and Oquawka Railroad Company, and denies that defendants in error and Andrick faithfully conducted the suit, and says that the verdict of $50,000 was set aside on account of their failure to prepare and file proper pleadings, which was a justification for employing other counsel. That the after employed counsel remodeled the whole of the pleadings, filed a new declaration, and that the cause was finally tried on the new pleadings. That defendants in error and Andrick allowed the railroad company to interpose, under the general issue with notice, many special matters, and at the same time to file nine special pleas, upon which they took issue, and then tried the cause upon both special pleas and notice. That the recovery of a judgment was from time to time delayed and hindered, on account of their carelessness and want of professional skill in attending to the case. That the defendants voluntarily withdrew from the cause, and ceased further to manage it and to advise in reference to it, and left it entirely in the hands of other counsel, who, by reason of their want of skill and diligence, plaintiffs in error had employed. That defendants in error and Andrick paid no further attention to the case, and never, after the second new trial was granted, appeared in court to take any part in the trial, or offered so to do. That one of the reasons why a new trial was granted, was the defect in one or more replications which they filed, which defects were pointed out by the court, and leave given to amend, which they declined to do. That the decision of the court as to the insufficiency of the replications is a bar to their claim; that they are not entitled to any

part of the money recovered by Morgan, and therefore can not sustain a bill in equity for any portion of it.

To these answers replications were filed. Against these allegations of the want of professional skill on the part of Mr. Andrick in the conduct of the case, he introduced C. Beckwith Esq., who had been one of the opposing counsel, as a witness, who testified that Mr. Andrick discharged his duties well and ably, and that he found it as much as he could do to answer his arguments. No evidence was adduced by the plaintiffs in error of any negligence or want of attention to the case on the part of the attorneys suing, except the alleged abandonment of it by Mr. Blackwell and their acquiescence therein, which will be noticed hereafter.

The Superior Court of Chicago rendered a final decree, reciting that the court found the surviving complainant, James H. Roberts, to be entitled, under the agreement of October 21, to five per cent. upon the whole amount of money or property, or both, realized out of the claim involved in the action at law in the bill mentioned, brought by Morgan against the Peoria and Oquawka Railroad Company, now the L. P. and B. R. R. Co. That said claim was stated by Morgan and Peckham, at the time of the commencement of the suit, at one hundred and fifty-five thousand five hundred and thirteen dollars and sixty-two cents. That during the pendency of the suit, on June 4th, 1857, there was paid on this claim $25,554, on which complainants are entitled to five per cent., amounting to $1,277 70, together with the interest from that date to the time of rendering the decree, such interest amounting to $562 18, and making, with the principal five per cent., $1,839 88. That the residue of the claim as fixed by the judgment in the suit, and the decree of September 11, 1860, was finally settled and adjusted between the parties to the decree on January 11, 1864, and then amounted to $67,117 20, five per cent. on which amount being $3,355 85, belongs to complainant, making due him in all, five thousand one hundred and ninety-five dollars and seventy-three cents. The court further found that

of the amount paid January 11, forty-seven thousand dollars was received in bonds of the United States, bearing six per cent. interest, called five-twenty bonds, which were deposited with the United States Trust Company of the City of New York, subject to the order of Ezra M. Prince, the Special Master appointed by the Macon Circuit Court, to which court the venue in the cause wherein the decree of September 11, 1860, was rendered, was changed. That the complainant having elected to do so, was entitled to receive in payment of so much of the amount adjudged to be due him, the sum of $2,350, out of those bonds so deposited, and in the same condition as to interest due, accrued or to become due thereon, in which they were at the time of the deposit, and that the complainant was entitled to be paid in lawful money the balance of the amount adjudged to be due him.

The decree enjoins the payment to the defendants, or any of them, except Prince, of any of the money or bonds alleged to be due complainant, and requires Prince, out of the moneys or bonds in his hands or subject to his control, to pay and deliver to complainant $2,350 in five-twenty bonds in the same condition as to interest, coupons, &c., in which they were received, and $2,845 73 in money, together with costs to be recovered of Peckham and Beach.

The case is brought here by writ of error, and the following are the errors assigned:

1. In overruling the demurrer to the bill of complainant.

2. In the admission of testimony on the part of complainant.

3. In not excluding the deposition of Andrick.

4. In rejecting proper evidence offered by the defendants.

5. In not consolidating the suits with the suit of Andrick.

6. In not dismissing the bill.

7. In rendering a decree for complainant, and in fixing the amount and terms of the decree.

On this assignment of errors, the counsel for plaintiff in error make these points:

1. That the court had no jurisdiction of the subject matter of the bill.

2. That the evidence on which the decree is based is incompetent.

3. That upon the merits the decree is unauthorized, and—

4. That the proper parties are not brought before the court.

It is insisted, that the sole foundation of the bill is simply an agreement by which the attorneys undertook to prosecute a suit to its final termination, and for which their clients engaged to pay them out of the moneys or property, or both, realized, each five per cent. That such agreement is a mere personal promise on the part of the clients, to pay the attorneys out of an indefinite and contingent fund, and being so, there was no equitable assignment of any part of the contingent fund, and therefore it is a claim and matter adjustable at law, and of which a court of equity has no jurisdiction.

Without going into a labored argument on this point, in which much has been said on both sides, and very ably, we are of opinion the court had jurisdiction of the subject matter, inasmuch as the proofs show there had been an assignment of this claim by Morgan and Peckham to Beach, subject in its terms to the prior claim of these attorneys, and an express reference made in the writing of assignment, to this agreement of October 21st, and providing, after the payment of their fees, and particularly those referred to in this agreement, Beach should retain the moneys due him, amounting, as the assignment shows, to seven thousand dollars. Beach then became the trustee for these attorneys for their proportion of the proceeds of the recovery, to be measured and ascertained by the October agreement. A trust was created and a duty imposed upon Beach, which he could neither lawfully violate nor evade, and the attorneys had to be first satisfied, before he could appropriate any of the proceeds to the payment of his own claim, nor could he pay any part of them to Morgan and Peckham, or either of them, until the attorneys were first satisfied of their claim. They had a priority in this fund so committed in trust

to Beach, and no authority is necessary to show in such case—indeed, in all cases of trust, the jurisdiction of a court of equity is complete. And when such court has obtained jurisdiction, the whole case is before it, and if the claim of a party to the priority in a trust fund is dependent on a condition, the court can and must determine if the condition has been performed or the party therefrom discharged. Hence, it was proper for the court to determine whether or not these attorneys had performed their engagement, and in doing so, the court was necessarily obliged to put· a construction upon the contract. The contract was written and prepared by one of the attorneys, and if it be obscure in meaning, or doubtful in expression of the terms, the fault and loss, if there be any, must be visited on him and those for whom he was acting as a party in the same interest.

The contract of October 11 is clearly a contract wholly confined to a suit to be brought to recover for the estimated work done by Morgan on his contract. An action· of debt was brought for such a recovery on the thirteenth of October, and an action of covenant for a breach of the construction contract and for prospective profits, was brought on the nineteenth of the same month.

Pending these actions, the agreement of October 21 was entered into. It provides for the conduct of that suit by these attorneys, and it is described as an action of covenant. The attorneys engage to prosecute it to a final termination, unless the cause of action shall be compromised by Morgan—Morgan is to pay the attorneys out of the moneys, or property, or both, realized, each five per cent. of the whole amount of the moneys or property, or both, realized, making in the whole ten per cent. on all the moneys or property, or both moneys and property, in any way realized.

By the agreement, this ten per cent. is to be paid whether the cause be compromised, sold, assigned or transferred to any other party or parties, or settled. Here comes in the ambiguous part of the contract: "In the event of a sale or transfer

of the claim, these attorneys were to be paid the aforesaid per cent. only on the amount of consideration money or property, or both, over and above the estimates already sued on by Morgan, that is, if the said estimates shall be included in such sale, assignment or transfer; otherwise, the said per cent. is to be upon the whole amount as aforesaid."

It is very clear the subject matter of this agreement was the action of covenant and nothing else. It was to be prosecuted to its final termination, unless compromised. But whether compromised or not, these attorneys were to be paid by Morgan out of the proceeds realized, each five per cent. of the whole amount of the proceeds realized, making in all ten per cent. on all the moneys or property in any way realized, and this ten per cent. was to be paid, whether the cause—the action of covenant—be compromised or sold, &c., or settled.

The estimates being sued for in another action, these attorneys were to be paid this per cent. only on the amount of the consideration realized in compromising, selling, transferring or settling the claim depending on the action of covenant, but if in making a compromise, sale, transfer or settlement, it became necessary for Morgan to adjust, at the same time, his claim for estimates, and to include them in this claim in the action of covenant, then the per cent. of the attorneys was to be calculated on the whole together, but if the estimates were not included in the sale, &c., the per cent. was to be calculated on the whole amount which might be realized from the action of covenant, whether that action was compromised, or sold, or transferred, or settled in any manner.

It is incumbent on the attorneys to show that these estimates were included in the final recovery, and to do this, the defendant in error produces the proceedings of the United States Court at the November term, 1856, where these two actions were pending, by which it appears these attorneys obtained leave to change their action of covenant into an action of assumpsit, on payment of all the costs which had accrued in that action, and to dismiss the actions of debt and covenant, so that

thenceforward the only action pending was an action of assumpsit, in which this claim for estimates was counted on and demanded.

It is evident, then, the amount of the estimates entered into the judgment recovered and formed a part of the claim specified in the amended declaration in assumpsit, and which, at that time, was the only declaration on file, and the only action pending, and in which all the claims of Morgan against the Railroad Company were included, and formed the basis of the recovery. This being so, we see no impropriety in allowing to the attorneys their per cent., for it is the plain language of the contract, though there is some reason for believing their services for the recovery of these estimates contracted for by Morgan, by the contract of October 11, had been actually settled up and paid for, and the payments indorsed on the agreement, yet the terms of the contract of October 21 sustain the attorneys in the claim they now make for the per cent. on the estimates. We do not think there is any ground for the supposition indulged in by Peckham in his answer that on the surrender of the receipts for three hundred dollars paid these attorneys, and the payment of two hundred dollars in addition to them, the agreement of October 21 was no longer effectual. There is certainly no proof that such was the understanding of the parties, nor is there any reason in it, for without the contract of October 21 continuing effectual, the attorneys would have no existing agreement whatever as to their compensation. We think it is quite evident the per cent. was to be calculated on these estimates.

Another objection is that the court, in its decree, allowed the attorneys a per cent. upon certain orders theretofore drawn by Morgan on the Railroad Company, in payment of certain of his employees.

These orders were issued before the execution of the agreement of October 21, and amounted to twenty-five thousand five hundred and fifty-four dollars. The largest order, for upwards of twenty-one thousand dollars, was dated the very

day the first suit in debt for estimates was commenced, namely, on the 13th of October, 1856, and was fully paid and satisfied to the holder by the Company. The other, for about four thousand dollars, was drawn on the 10th of December, 1855. With what propriety these attorneys can claim a per cent. on the amount of these orders, we are at a loss to perceive. The money was not "realized" to Morgan by any act or instrumentality of theirs. The plain import of the contract of October 21, is that they were to have this per cent. on whatever amount of money or property should be realized through and by means of the services they, as attorneys, were to perform, and had undertaken to perform. Suppose Morgan had in his pocket at the time this agreement was executed, (October 21), the promissory note of the Company, given in part payment for his services and work, could the attorneys, under any reasonable construction of this agreement, claim to be entitled to a per cent. on the amount of that note? We think not; and the claim to a per cent. on these orders, about which the attorneys did nothing, and nothing was "realized" by or through these orders, by any act of theirs, is upon no better foundation. The court, we think, erred in allowing this per cent. on these orders. The amount of these orders was deducted from the amount of the recovery, having been realized by Morgan before the retainer of these gentlemen.

It is further urged by plaintiffs in error, that the case was abandoned by the leading counsel, Mr. Blackwell, and the contract not being performed by the parties obligated, that fact is fatal both to the original and supplemental bill.

The contract, it is apparent, was made with four attorneys, three of whom composed a firm, and it was for the services of all of them. One of them, Mr. Blackwell, consented to terminate the contract, being annoyed by the importunities of Peckham, one of his clients, and largely interested in the suits, and there is strong presumption from the record that all the attorneys acquiesced in the abandonment of the case, as not one of them was known to move in the case after the second verdict

was set aside. The abandonment of the contract, then, deprives the parties of any claim under it, and they must be left to recover such fees and compensation as they were reasonably entitled on the basis of a *quantum meruit,* but would give no lien on this or any other specific fund. There is evidence sufficient in the record to show that these attorneys, from Mr. Blackwell to Mr. Andrick inclusive, after Peckham and Morgan had called to their aid other counsel, have had nothing to do with the controversy until the fruits of a recovery, brought about and finally established by other counsel, had begun to be developed. They then file these bills in chancery.

The withdrawal of Mr. Blackwell from the case by consent of his associates, would conclude the rights of the associates under the contract. When a party engages the services of a particular lawyer, or of an association of lawyers, he is entitled to the services of every one of them, and if one abandons the retainer with the assent of the others, express or implied, or they attempt to supply his place with another attorney of equal or superior qualifications, it will be no performance of the contract. It is a personal duty and trust which cannot be delegated or performed by another. *Cornelius* v. *Wash,* Breese (New Ed.) 98. As to the retainer being a joint and continuing contract, and the effect and consequences thereof, see *Walker* v. *Goodrich,* 16 Ill. 341; *Smyth* v. *Harvie et al.,* 31 ib. 62.

It surely cannot be urged by defendant in error, that he had a right to give up the case because his clients had employed other counsel. Something depends on the manner in which such a thing is done, but in general it is a great advantage to have as an associate, no matter how distinguished the attorney first retained may be, another no less distinguished. We do not think the employment by Morgan and Peckham of other attorneys, justified defendant in error and his associates in their abandonment of the case, or was cause of complaint on their part. There is no formal dismissal of these attorneys shown, but there is shown a clear and unequivocal abandonment by the leading counsel, declared not only in open court,

but to several indifferent persons. We think the evidence greatly preponderates in favor of the position that there was an abandonment by all the associates, after the employment of other counsel by Morgan and Peckham, and which employment did not justify the abandonment.

Another objection is made by the plaintiffs in error, that this contract on which a joint action would lie was split up, and it is insisted, for the purpose of making witnesses out of the several associates for each other, and it is insisted that it is illegal and improper for a party to be a witness and an attorney in the same case. In this case Andrick is really testifying in support of his own interest, as Roberts was testifying to support his own claim in the Andrick case, for the cases rest on the same bottom.

We are not advised that it is contrary to any statute, or to any maxim of the common law, to make the attorney in a cause a witness in the cause he is managing. This is a matter which appeals to the professional pride of an attorney, and his sense of his true position and duty. In the English courts, in several cases it was held that an attorney can not appear in the same cause in the double capacity of witness and advocate, and it has been so ruled in Pennsylvania and in Iowa, on the circuit. In Indiana it was held by Judge McDonald, now United States District Judge, that an attorney in a cause could not be permitted to testify to the general merits of the case. In *Frear* v. *Drinker*, 8 Penn. State Reports 521, the court said that it was a highly indecent practice for an attorney to cross-examine witnesses, address the jury and give evidence himself to contradict the witness—that it was a practice to be discountenanced by court and counsel—that it was sometimes indispensable that an attorney, to prevent injustice, should give evidence for his client. It however leads to abuse, but at the same time there was no law to prevent it. All the court can do is to discountenance the practice, and when the evidence is indispensable, to recommend to the counsel to withdraw from the cause.

This subject has engaged the attention of other courts, and of this court, and however indecent it may be in practice for an attorney retained in a case and managing it, to be a witness also, we can not say he is incompetent, and must leave him to his own convictions of what is right and proper under such circumstances. 2 *Western Law Magazine* 197. We do not, however, consider that the counsel in these cases occupied the position of counsel and witness. Neither of them appear as counsel, but we deem the remarks we have made on this point as not inappropriate, inasmuch as this double capacity has been not unfrequently assumed in the courts of this State, and we think proper to express our disapprobation of it. We think, on a careful consideration of all the facts and circumstances of this case, that the abandonment of the case by the leading counsel, with the implied assent of all of them, relieved the case from the contract, and whatever claim for services rendered this defendant and his associates may have, must be made the subject of a *quantum meruit*, with a lien on this specific fund, Beach having taken the assignment subject to this claim. The allowance of a per cent. on the amount of the orders Morgan had himself negotiated, was wrong, and the decree was wrong, allowing the full amount claimed for services. For the reasons given, the decree must be reversed and the cause remanded, the defendant in error being allowed to show what he reasonably deserved to have for his professional services.

*Decree reversed.*