## CLEWS v. TRAER ET AL.

1. **Trustees:** FRAUDULENT PURCHASE OF TRUST PROPERTY. The testimony in this case, in respect to the purchase of corporate stocks, considered, and held sufficient to establish that the property in question was purchased by means of the fraudulent concealments and misrepresenta tions of one of the defendants, who held the property as trustee for plaintiff; that his wife, the other defendant, had knowledge of and participated in said fraudulent acts; and both were liable for the value of the property, less the amount paid.

2. **Trial:** STIPULATION FOR BEFORE JUDGE: AMENDMENT. Where the parties by a written stipulation provided for a trial before the judge, the acts, doings, rulings and decisions of the judge to stand in all respects as the action of the court, the judge thereunder had the same power to allow amendments as though the trial had been in open court.

3. **Fraud:** TRUSTEE: ACTION FOR VALUE OF PROPERTY. Where the sale of property was induced by false representations as to its value, the sale is void, and the purchaser will be regarded as holding the same in trust for the owner. In such case the assignee of the owner may maintain an action to recover for the fraud, and the defendants cannot complain that the consideration paid was not returned before suit was brought.

4. **Statute of Limitations:** DILIGENCE. Where an action is brought to recover on the ground of fraud, the statute of limitations does not commence to run until the discovery of the fraud, and a party is not required to plead and show dilligent efforts to fasten the fraud upon a person, where he was ignorant that such person had any connection with the business, in order to arrest the bar of the statute.

5. **Amendment:** NEW CAUSE OF ACTION. *Held*, that the cause of action in this case was based upon the fraudulent conversion of the money to which plaintiff was entitled, and that the amendment did not set up a new cause of action.

*Appeal from Linn Circuit Court.*

Thursday, December 15.

Action in chancery. There was a decree granting relief to plaintiff from which defendants appeal. The facts of the case so far as they are involved in the questions decided by the court appear in the opinion.

*Hubbard, Clark & Dawley,* for appellants.

*Clark & Lynch* and *R. A. Gilmore,* for appellee.

Beck, J.—I. The papers upon which this case is submitted for decision are voluminous. The abstracts contain more than four hundred pages, and the arguments of counsel are presented in more than two hundred and twenty pages. The pleadings are prolix, and the evidence presented for our consideration is minute in disclosing facts and circumstances and, in some instances, repetitions. To bring our opinion within reasonable bounds and to consider in our discussion only the questions of law and facts upon which the decision of the case turns, have involved watchfulness and no little labor. We shall not attempt to discuss with particularity the testimony. It would require many pages to review it even briefly. We shall, as we are accustomed in such cases, content ourselves with stating our conclusions as to the controlling facts put in issue by the pleadings.

II. The original petition was filed January 17th, 1878, and alleges that plaintiff was a stockholder owning fifty shares of stock of the par value of $1.000 each in the Cedar Rapids and Northwestern Construction Company, which was engaged in building the Burlington, Cedar Rapids & Minnesota Railroad; that plaintiff was adjudged a bankrupt February 19, 1874, and J. Nelson Tappan was appointed the trustee in bankruptcy of his estate, and that on the 23d day of February, 1875, the Construction Company went into voluntary dissolution and the

defendant, John W. Traer, and others were made trustees to take possession of the assets, convert them into money and pay the same to the stockholders, after all debts of the corporation were paid. It is shown that the value of the assets of the company amounted to a large sum and that prior to the dissolution dividends were made and declared upon plaintiff's stock amounting to $15,000, all of which were fraudulently concealed from plaintiff and from the trustee of his estate in bankruptcy, by the officers and managers of the construction company, and by defendant Traer, who had been from the first connected with the corporation and well knew all of its affairs. It is charged that he conspired with other officers of the company and with certain other parties, to cheat and defraud the plaintiff and his estate in bankruptcy, by falsely representing to plaintiff and to Tappan, that the stock of the company in the name of Clews was of little value, not exceeding $600, and that it would be to the best interest of the estate to sell it for that sum. In pursuance of this conspiracy it is alleged that Traer, through certain agents and attorneys, induced Tappan as trustee in bankruptcy to transfer to Traer's attorney or agent, the stock standing in Clews' name for the consideration of $1,200. The facts and evidence supporting the allegations of the conspiracy and fraud of defandant Traer, and his associates, are particularly and, in some instances, minutely set out in the petition, and it is alleged that they received $15,000 upon the stock which they had purchased for $1,200, Through their fraud and conspiracy. By the original petition John T. Ely, William Green and D. W. C. Rowley, who were officers of the construction company, and the two first named appointed trustees upon the dissolution of the corporation, were made defendants. It is shown that Tappan, the trustee in bankruptcy, transferred and assigned to plaintiff all claims held by him on account of the stock in the construction company.

In October, 1879, Alla D. Traer, wife of defendant, John W. Traer, was made a defendant by an amended petition which

alleges that the stock was transferred to her by the agents or attorneys of her husband, who acted for him in carrying out his conspiracy to defraud the plaintiff; that the transfer and purchase of the stock was made under the directions of Traer, and the money ($1,200), paid for the stock belonged to him and that his wife was but an instrument used by him to accomplish his fraudulent purposes.

On the 9th of February, 1880, plaintiff filed an amendment to his petition, whereby Alla D. Traer was made a defendant, which repeats many of the allegations of his prior pleadings, and states the facts and circumstances upon which his charge of fraud is based with some variations from the former allegations.   Among other things he shows that Tappan, by the assignment of the stock, transferred all claim to and interest in the dividends in the hands of Traer, held by him as trustee of the bankrupt estate.   Other allegations of the petition and amendments thereto need not be here referred to.

The defendants in their answer put in issue all averments of fraud found in the petition and amended petition.   Defendants, Traer and wife, deny all misrepresentations and fraud with which they are charged in the petition, and in substance allege that the stock and devidends were acquired fairly and in good faith.   The petitions as to all the defendants except Mr. and Mrs. Traer were dismissed.   We think this decision of the court is correct, as we fail to find evidence upon which they can be held liable to plaintiff, upon the allegations of the petition. Indeed we do not understand that plaintiff's counsel in their arguments complain of the dismissal of the petitions as to the defendants, other than Traer and wife.   A judgment for the sum of $15,000, was rendered against Mr. and Mrs. Traer.

II.   We are all united in the conclusion which is quite satisfactory to each of us that the testimony amply supports the judgment.   To our minds the following facts are clearly established by the evidence:

1. TRUSTEES: fraudulent purchase of trust property.

1. Defendant Traer was a stockholder, officer and trustee of the construction company, and had been from the first actively engaged in the management of its affairs.

2. As trustee he was solely entrusted with the custody of the assets, books and papers of the corporation.

3. He had full and complete knowledge of all matters pertaining to the assets and business of the company.

4. He knew that plaintiff, or his bankrupt estate, was entitled to dividends amounting to at least $10,500, received by defendant upon entering upon the discharge of his duties as trustee.

5. The assets of the company, much of them being in money, he held as a trustee, for the stockholders, being so constituted by the act of dissolution of the corporation.

6. He misrepresented the value of these assets to Clews and Tappan and induced them to believe that the sum to which they were entitled did not greatly exceed $1,200 in value, the amount of the consideration of the assignment of the stock by Tappan.

7. He employed attorneys and agents to negotiate for the purchase of the stock who concealed from Tappan that the purchase was made for Traer or his wife.

8. The purchase made by these agents was for Traer, and neither of them at any time was a good faith purchaser.

9. Traer in all of the transactions connected with the purchase of the stock acted as the agent of his wife.

10. Mrs. Traer knew that her husband was a trustee holding the assets for the stockholders of the company and knew their value, and was guided in her purchase by his advice and direction.

11. She knew that Tappan was ignorant of the value of the assets and had knowledge of the devices used by her husband to secure the purchase of the stock and dividends.

We conclude that the property was purchased by means of the fraudulent concealments and misrepresentations of Traer,

of which his wife had knowledge and in which she participated, and that both are liable for the value of the property purchased through their frauds, less the sum paid therefor.

III.   We will proceed to notice the objections urged by defendants' counsel to the proceedings and decree of the court below not disposed of by our conclusions upon the facts.

It is insisted that the amendment to plaintiff's petition last filed was made without authority of law and must be eliminated in this court.  The objection is based upon the following facts:  The trial of the cause was commenced on the 3rd day of February, 1880, and by agreement was continued in vacation.  On the 9th day of February, in vacation, the plaintiff had leave to file the amendment in question.  This, it is insisted, was without authority of law for the reason that a judge in vacation has no authority to permit amendments.  The cause was tried upon a stipulation in the following words:

2. TRIAL: stipulation for before judge: amendment.

"It is stipulated that the hearing and argument of this cause be had before Hon. John McKean, judge of said court, at Cedar Rapids, in said county, commencing Tuesday, February 3d, at 9 o'clock A. M., and continuing from day to day until the hearing and argument are completed.  Depositions may be filed by said judge, together with motions to suppress the same, or exceptions thereto, with the same effect as though filed in open court or by the clerk thereof, and the same action may be had thereon, and on all other motions and interlocutory matters, before said judge, as in open court, and the acts and doings, rulings and decisions of said judge on the hearing before him shall be spread upon the records of the court and shall stand in all respects as the action of the court; all of the parties to said suit hereby expressly waiving all objections for irregularity, if any there be, because of such hearing, action and decisions before the said judge instead of the court; final decree shall be entered by the court as in other cases, upon the

hearing and argument herein provided for before said judge, as though the same was made in open court."

Under the terms of this stipulation the judge was authorized to pass upon all motions and interlocutory matters as in open court. All proceedings were to be the same as in a trial before the court. By this stipulation the trial was regarded as being before the court. We need not inquire what the powers of the judge respecting amendments would have been in the absence of the stipulation; with the stipulation they were the same as those conferred by law upon the court. The stipulation affords a complete and ready answer to the objection under consideration. Nothing more need be said upon this point of the case.

IV.  It is insisted that this is an action to rescind the assignment of the stock and dividends, and that the action cannot be maintained for two reasons, namely:

1. Tappan cannot retain all he has received, making no complaint and maintaining his status as the contract left him, and yet, by an assignment of his claim against Traer, authorize Clews to set aside the contract.

*3. FRAUD: trustee: action for value of property.*

2. Clews has taken no steps to rescind the assignment.

These objections are made under a misapprehension of the case.  It is not an action to rescind the assignment of the stock and dividends.  But it is an action of a stockholder of a corporation to recover dividends due him in the distribution of its assets which are in the hands of a trustee.  The assignment of the stock and dividends having been procured by the fraud of the trustee and assignee is void.  Being void it cannot stand in the way of recovery by plaintiff. The trustee's act in paying the assets to Mrs. Traer being fraudulent, did not discharge him from liability to the stockholders, but she, as a party to the fraud and a recipient of the assets to which plaintiff is entitled, becomes liable therefor.  Equity will pursue them in her hands.  The contract of the assignment be-

cause of fraud is not binding and the parties guilty of the frauds can gain no protection under it. These views are based upon the most familiar equitable principles.

Tappan having been defrauded by defendants in procuring the assignment of the stock and dividends, held a claim against them for the dividends and assets in their hands to which he was entitled. They as we have seen will be regarded as holding the assets in trust for him. This claim held by Tappan is based upon the fraud of defendants. It arose upon the transfer of the stock and dividends, and is for a tort, fraud being regarded by the law as a tort. 1 Hilliard on Torts, p. 4; 2 Id., p. 141. Claims for torts may be assigned under the laws of this State, and actions thereon may be prosecuted by the assignees. *Weire v. City of Davenport*, 11 Iowa, p. 49; *Gray v. McCallister*, 50 Iowa, 497.

As this is not an action to rescind the assignment of the stock and dividends, but is an action to recover for a fraud, a tort, neither Tappan nor his assignee, Clews, were required to take any steps looking to rescision.

The defendants cannot complain that Tappan and plaintiff hold the consideration paid for the assignment, $1,200, and yet seek to recover the value of the dividends less $1,200. Defendants' liability is measured by the amount of money to which Tappan would have been entitled had defendants honestly paid to him or his assignee the dividends on the stock. The $1,200 go to defendants' credit as so much paid upon the dividends.

V. The defendants insist that the action is barred under section 5057 of the U. S. Rev. Statutes, which limits the com-

4. STATUTE of limitations: diligence. mencement of an action by an assignee in bankruptcy to two years after the cause of action accrued. But in actions brought to recover on account of fraud the bar of the statute commences to run when the fraud is discovered. *Bailey, assignee, etc., v. Glover et al.*, 21 Wal., 342.

The action was commenced against J. W. Traer within two years from the time the assignment of the stock and dividends was made. But the action as to Mrs. Traer was not commenced within that time. The last amended petition filed by plaintiff alleges that the connection of Mrs. Traer with the fraud complained of was not discovered until September 24, 1879, and before that date plaintiff had no knowledge thereof.

Counsel for defendants insist that the law requires plaintiff, in order to arrest the bar of the statute, to plead and show diligence used to discover the fraud and the circumstances of the discovery. We may, for the purpose of the case, admit the correctness of the rule relied upon by counsel. But no objection was raised in the court below by demurrer, or in any other manner, to the amended petition on the ground that it did not sufficiently show diligence in the discovery of the fraud. The objection to the pleading on this ground cannot be first raised in this court.

The testimony shows to our satisfaction that Mrs. Traer's connection with the fraud was not discovered until it was disclosed by testimony taken in the case. As plaintiff was ignorant of the part Mrs. Traer acted, and had no knowledge of her connection with the transaction, there was nothing to direct inquiry to her. He was not required to make diligent efforts to fasten fraud upon her when he had no intimation that she had any connection with the business.

VI. Counsel for defendant insist that when a new cause of action is set up by amendment to the petition made after the statute of limitations has fully run, the action will be barred, though when commenced it was not barred. Applying this rule, which for the purposes of this case may be admitted, counsel insist that the amendment to the petition last filed presents a new cause of action for the reason, it alleges, that the dividends due upon the stock were transferred by the assignment. The other petitions allege the transfer of the stock only, and before this amend-

5. AMEND-
MENT : new
cause of ac-
tion.

ment plaintiff insisted that the dividends due plaintiff when Traer was appointed trustee were not transfered by the assignment.

Counsel entertain the mistaken belief that plaintiffs' cause of action rested upon the transfer of these dividends. The cause of action is based upon nothing of the kind. It is the act of defendants in fraudulently appropriating to their own use money in their hands held by them as trustee for plaintiff. The conversion of the money to which plaintiff is entitled constitutes the cause of action. Whether the money was or was not transferred by an assignment is a matter of evidence to be considered in determining whether it was fraudulently transferred. The transfer by the assignment is pleaded and relied upon by defendants as a fact showing that there was no fraudulent appropriation of plaintiff's money. This transfer and assignment, therefore, instead of being the *cause of action* of plaintiff is a matter of defense relied upon by defendant. The point demands no further notice.

VII. The separate consideration of many points discussed by counsel on both sides of the case is rendered unnecessary in view of the fact that they are disposed of by the conclusions we reach in other branches of the case. And many questions argued by counsel are not involved in the facts as we find them from the evidence.

Plaintiff claims that he is entitled to a judgment for a sum greater than he received in the court below. We think the amount of the decree of the Circuit Court is approximately correct and ought not to be changed.

AFFIRMED.