CHARLES B. PHILLIPS

*v.*

JAMES K. EDSALL *et al.*

*Filed at Ottawa April 3, 1889.*

1. CHANCERY—*jurisdiction—to enforce equitable lien upon a fund— as, in case of the assignment of the proceeds of a prospective judgment.* A person employed attorneys to attend to certain suits, and gave his notes to them for their fees, as agreed upon, and to secure the payment of such notes, by his written contract assigned to the attorneys such

portion of the amount that should be found due the client in a certain cause then pending, as might be sufficient to pay the notes, and authorized such attorneys to receive and receipt for the same. Judgment was recovered in the case in respect to which the assignment was made, and the money paid into court, whereupon the attorneys filed their intervening petition in that case, setting up their right to have their notes paid out of the fund: *Held*, that a court of equity had jurisdiction to entertain the petition and to enforce the assignment, a trust being involved.

2. Where a client makes a written assignment of a part of his claim then in litigation, to his attorneys, sufficient to pay his obligation to them for fees in that and other cases, the attorneys may, either before or after the decree in the pending case in which the assignment is made, and before the maturity of the notes, file their supplemental bill in the cause, and have their assignment protected and enforced by the court, and have a decree entered preserving their equitable lien upon the fund when recovered and paid into court. In such case, the attorneys, as such assignees, have no remedy at law to enforce the assignment, and the jurisdiction of a court of chancery is unquestionable.

3. The exhibiting of a bill or petition is proper at any time after the assignment, in order to give the court notice of the rights of the assignee in a fund which is the subject of pending litigation.

4. SAME—*assignment of part of a debt—creates an equitable lien enforceable only in equity.* A part of a debt or chose in action is not assignable at law, but can be enforced in equity; and in such case, a trust will be created in favor of the equitable assignee on the fund, and will constitute an equitable lien upon it.

5. CROSS-BILL—*right of complainant therein to a continuance of the original bill.* The filing of a cross-bill does not necessarily stay the hearing upon the original bill, and when there has been a want of diligence on the part of a defendant, and the original bill is ready for hearing, he can not interpose a cross-bill, and insist, as a matter of right, upon the postponement of the hearing on the original bill.

6. On January 16, 1885, an original bill or intervening petition was filed in a cause, to which an answer was not filed until May 10, 1887, though the defendant was ruled to answer by October 19, 1885. The cause, on May 13, 1887, was referred to the master, to take and report the evidence, with his conclusions, and the master, on June 28, 1887, made his report, to which the defendant filed exceptions on July 6, 1887. On July 12, 1887, the defendant, by leave of court, filed a cross-bill, seeking to make a new party defendant. The matters alleged in the cross-bill were mostly those set up in the answer, and the new matters therein alleged were known to the defendant when he filed his answer: *Held*, no error in refusing defendant's motion to postpone

the hearing of the original bill until the hearing was ready on the cross-bill.

7. TRIAL BY JURY — IN CHANCERY — *how far discretionary with the chancellor—and when the verdict is merely advisory.* In cases properly cognizable in equity, under any one of the original heads of chancery jurisdiction, it is entirely discretionary with the court whether it will or will not submit any issue or issues of fact to a jury, and when such submission is made, the verdict is simply advisory, and may be disregarded by the court.

8. A motion for a jury trial in a case in equity was not made until some two weeks after a reference to the master, and after a considerable portion of the testimony had been taken, and was not for the submission of any particular issue or issues, but for a trial by jury of all the issues of fact made by the pleadings. The court refused the same : *Held,* that the action of the court was eminently proper.

9. CONTINUANCE—*on account of amendment to bill in chancery.* After the filing of a cross-bill, and on the hearing, the complainant in the original bill amended his bill in two unimportant respects, setting up a fact which had been proved by the defendant, and another shown by the record before the court, and which did not make it necessary for the defendant to file a new answer or cross-bill, and no leave was asked by him to file new or amended pleadings: *Held,* that this did not make a prior refusal to postpone the hearing till the cross-bill was ready for hearing, erroneous.

10. ATTORNEY AND CLIENT—*rights of the latter under retainer of a firm.* Where a firm of three attorneys enter into a written contract of retainer in a number of cases, and therein agree to act as attorneys and counsel for the client, and generally to do all things deemed necessary in the due course of proceedings to faithfully represent and defend his interests in such cases, according to their best judgment and ability, in connection with such other attorneys as may be employed, the client will be entitled to the services of all three of the partners in each one of the suits.

11. The spirit of such a contract, however, does not require that each one of the attorneys shall be present in court when each and every step is taken in each and every one of the several causes, unless, in their best judgment, such presence is necessary or advisable.

12. In such case, when all three of the attorneys act together, and two of them, after consultation with the third, in regard to the case, attend the trial, and no complaint is made at the time that the three do not all participate in the trial, they may recover the fee agreed to be paid. It is different when one of them abandons the case.

13. SAME—*attorney prevented from acting by his client.* A client who objects to his attorney preparing a bill of exceptions in a case, and in-

sists it shall be prepared by another attorney, who fails to get the same signed and sealed, will, in equity, be estopped from complaining that the first named attorney failed to take such bill of exceptions, and he may recover the compensation agreed to be paid him.

14. INTEREST—*whether allowable—and from what time—under a special contract.* Certain park commissioners took possession of a tract of land in August, 1870, not tortiously or under the law of eminent domain, but under a contract of purchase with the owner. By the terms of the contract the purchase money would not become due until the purchaser's title was freed from all adverse claims, and established, which was not done until in 1882, when the court in which a suit was pending for the settlement of the title, allowed the owner interest for eleven or twelve years before the money became due under his contract. It was *held,* that he had no cause of complaint against his attorney procuring a decree for the payment of the purchase money because he failed to have the decree find a gross sum for both the principal and interest, so that the interest might bear interest after the date of the decree.

15. On the 12th day of June, 1884, the owner of a tract of land the title to which was in litigation, and pending a suit to enforce the specific performance of a sale thereof to park commissioners, gave his two notes, of $2500 each, payable to his attorneys for their legal services, one on or before one year after date, and the other on or before two years after its date. By a written contract of the parties, an assignment was made by the client to his attorneys of so much of his purchase money as might be necessary to pay the notes, in which contract it was provided that the notes should, in any event, become due and payable as soon as the amount to be paid for the land by the park commissioners should be ascertained and determined. The decree fixing the amount to be paid for the land was made January 9, 1885, and fully settled the rights of the parties thereto, but the money was not paid into court by the park commissioners until April 23, 1887: *Held,* that the notes became due January 9, 1885, at the date of the decree, and drew interest from that date, and not from the time the money was paid under the decree.

16. DECREE—*certainty as to amount to be paid.* A decree for the payment of money should, according to the better practice, state in words and figures the amount of principal and interest. But when the decree finds all the necessary data, so that the exact sum due is only a matter of computation, with only one result, it will be sufficiently definite and certain. That is sufficiently certain which can be made certain.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Mr. JOHN GIBBONS, for the appellant:

By the contract between the parties, the security depends upon the performance of the agreement by Edsall, Hawley & Edsall, and the notes are to be due "as soon as" the amount to be paid for the land shall be ascertained and determined. The question is, are the words, "as soon as," equivalent to the word "when," so as, under all the circumstances, to protect both parties,—anticipating, "if ascertained and determined" before they fell due; postponing, if after they fell due.

It was the duty of the intervenors, as the attorneys of Phillips, to have had "ascertained and determined," by the court, just the amount to be paid to Phillips. By failing to do so, Phillips lost the accruing interest on about $34,000, up to April 23, 1887, amounting to about $5000. That in such a decree the amount is not "ascertained and determined," see *Smith* v. *Trimble,* 27 Ill. 152; *Boston* v. *Nichols,* 47 id. 353; *Wilhite* v. *Pearce,* id. 413; *Stevens* v. *Coffeen,* 39 id. 148; *Barstow* v. *McLachlan,* 5 Bradw. 96.

One year before the testimony was heard in this case, Hawley, one of the firm, had removed from the State, and was residing in Nebraska, thus practically abandoning the suits not tried. Appellant was entitled to the services of each one of appellees and Mr. Hawley. *Morgan* v. *Roberts,* 38 Ill. 65; *Cornelius* v. *Wash,* Breese, (new ed.) 98; *Walker* v. *Goodrich,* 16 Ill. 341; *Smyth* v. *Harvie,* 31 id. 62.

As respects the lien of attorneys, see *Humphrey* v. *Browning,* 46 Ill. 476; *Forsythe* v. *Beveridge,* 52 id. 268.

The court erred in setting aside $6000 for the attorneys, and in denying appellant's motion to submit the case to a jury. *Gage* v. *Ewing,* 107 Ill. 11; *Smith* v. *Goode,* 29 Ga. 185; *Striker's case,* 1 Bland's Ch. 57; *Pugh* v. *Dorsey,* 8 S. & M. 379; *Lynch* v. *Willard,* 6 Johns. Ch. 342.

Messrs. EDSALL & EDSALL, *pro se :*

The assignment of a part of a fund due the assignor from his debtor can not be enforced at law, (*Chapman* v. *Shattuck*, 3 Gilm. 49,) but such an assignment of a part of a debt or chose in action may be enforced in equity.   1 Daniell's Neg. Inst. p. 20, sec. 23 ; 2 Story's Eq. Jur. sec. 1044; *Pomeroy* v. *Life Ins. Co.* 40 Ill. 398 ; *Exchange Bank* v. *McLoon*, 73 Me. 498 ; *Wellsburg Bank* v. *Kimberlands*, 61 W. Va. 555.

It was an assignment of part of the subject of the pending suit, and therefore the rights of the assignees were properly presented by a supplemental bill.   Such a bill may be filed either before or after the decree in the principal case.   Story's Eq. Pl. sec. 338.

The decree finally determines the rights of the parties. While the decree does not in terms state the net result of the computation of the interest, it finds all the data from which the result may be found, by a mere computation of the interest as therein directed.   That is sufficiently certain which can be made certain.   Broom's Legal Maxims, 599.

By the contract of June 12, 1884, appellees acquired an interest in, and a lien upon, the fund which was the subject of litigation in that case, and which, on a presentation of the facts, it would be proper for the court having jurisdiction of the *res*, to recognize and protect, whether Phillips' notes held by appellees had become due or not.   Such notes, by the terms of the contract, would, in any event, become due as soon as the amount the South Park Commissioners were to pay for the land was determined.   Had the appellees seen fit to do so, it would have been proper to file their supplemental bill, showing that Phillips had assigned to them a part of the fund involved in the suit of *South Park Commissioners* v. *Phillips*, immediately after the date of the contract, and before the decree therein of January 9, 1885.   In such case, the assignee or "alienee might himself file a supplemental bill,

against the original plaintiff and other parties to the suit, to have the benefit of the proceeding." See 2 Daniell's Ch. Pr. (4th ed.) p. 1516.

Where a third party takes an assignment of the interest of one of the parties to a suit *pendente lite,* he may, if he thinks proper, make himself a party to the suit by supplemental bill. (*Lunt* v. *Stephens,* 75 Ill. 508.) Or he may, under the modern practice, on leave of the court, file an intervening petition, and thus have his rights adjudicated upon and protected. *Marsh* v. *Green,* 79 Ill. 385.

It was proper for the court to allow an amendment on the hearing, stating facts already proven; and the same did not, under these circumstances, operate as a withdrawal of the replication. *Moshier* v. *Knox College,* 32 Ill. 156; *Martin* v. *Eversal,* 36 id. 222; *Jefferson County* v. *Ferguson,* 13 id. 33; *Gordon* v. *Reynolds,* 114 id. 123.

Under the circumstances, it was not error to proceed with the hearing of the supplemental bill before the cross-bill was ready to be heard. (*Myers* v. *Manny,* 63 Ill. 211; *Wiley* v. *Platter,* 17 id. 538; *Beauchamp* v. *Putnam,* 34 id. 378.) But no relief in equity can be had upon the cross-bill.

Where a cross-bill seeks affirmative relief, it is indispensable that it be equitable relief, otherwise it will be subject to a demurrer, for to this extent it is in the nature of an original bill, seeking further aid of the court beyond the purposes of defense to the original bill, and under such circumstances the relief should be such as, in point of jurisdiction, the court is competent to administer. *Tobey* v. *Foreman,* 79 Ill. 489; Story's Eq. Pl. sec. 398.

This was not a case which had a legal or constitutional right to a trial by jury. *Heacock* v. *Hosmer,* 109 Ill. 245; *Ward* v. *Farwell,* 97 id. 593; *Petition of Ferrier,* 103 id. 367.

It is within the discretion of the chancellor to take the verdict of a jury upon any question of fact. (1 Starr & Curtis' Stat. p. 411, sec. 40.) In such cases, however, the verdict is

merely advisory, and may be wholly disregarded in the decree. *Milk* v. *Moore,* 39 Ill. 584; *Titcomb* v. *Vantile,* 84 id. 371.

In the present case, the cause was, without objection, referred to the master to take and report the evidence, with his conclusions thereon, on May 13, 1887, and the hearing commenced before the master on the 14th of May. The appellant appeared before the master, and participated in this hearing, and delayed making his motion for trial by jury until May 26, 1887. And the motion then made was, that all the issues of fact formed upon the pleadings be submitted to the jury, instead of requesting any particular issue to be so submitted, as authorized by the statute.

The answer was not sworn to, nor was the motion supported by affidavit, as required by the practice. The court not only properly exercised its discretion in the denial of this motion, but to have granted it would have been positive error. *Milk* v. *Moore,* 39 Ill. 584; *Hahn* v. *Huber,* 83 id. 244.

Mr. JUSTICE BAKER delivered the opinion of the Court:

On and prior to the 12th day of June, 1884, there were pending in the circuit court of Cook county the cases of *South Park Comrs.* v. *Charles B. Phillips et al.,* (including the various cross-bills and petitions filed therein,) the case of *Elizabeth Ann Phillips* v. *Rose M. Kerr, Charles B. Phillips et al.,* and the case of *Williams, for the use of Blatchford* v. *Charles B. Phillips;* and pending in the Superior Court of Cook county the cases of *Eliza B. Eaton* v. *Charles B. Phillips,* and *Amos F. Tompkins* v. *Charles B. Phillips,* and in the Criminal Court of Cook county, an indictment against Charles B. Phillips for libel. James K. Edsall and Samuel C. Edsall, the appellees, and John B. Hawley, attorneys-at-law, had theretofore been retained in said suits by said Charles B. Phillips, and had performed various legal services therein, and had also attended to other legal business for him. Some two months before the

date above mentioned, they had, owing to a misunderstanding
with said Phillips, withdrawn from said cases and turned them
over to other counsel employed by him, and had brought suit
against him for something over $2500, claimed by them to
be due for services.

On said 12th day of June, 1884, an arrangement was made
between the parties, the results of which were, that said suit
for fees was dismissed, and appellees and said Hawley again
took charge of the above enumerated causes pending against
Phillips.   On the same day, said Phillips executed to appellees
and said Hawley his two promissory notes of that date, for
$2500 each, one payable on or before one year from date, and
the other on or before two years after date.   At the same time a
written contract was entered into by and between said Charles
B. Phillips, of the first part, and appellees and said Hawley,
of the second part, which, after stating that the party of the
first part retains the parties of the second part to act as his
attorneys and counsel in the cases above mentioned "pending
in the circuit, Superior and Criminal courts of Cook county,
respectively," provides as follows :

"And the parties of the second part hereby agree to accept
such retainer and employment, and to act as the attorneys
and counsel for the said Phillips, and generally to do all things
deemed necessary in the due course of proceedings in said
courts, to faithfully represent and defend his interests in said
cases, according to their best judgment and ability, in con-
nection with such other attorneys, if any, as said Phillips has
employed or may see fit to employ for that purpose ; and in
consideration of the premises, and also in consideration of
the amount due said parties of the second part for services
heretofore rendered as the attorneys and counsel for said party
of the first part, the said party of the first part hereby agrees
to pay the said parties of the second part the sum of $5000,
one-half of which is to be paid on or before one year from the
date hereof, and the remainder on or before two years from the

date hereof, according to the tenor and effect of two promissory notes of even date herewith; and to secure the payment of said notes, the said party of the first part hereby assigns to the parties of the second part such portion of the amount which may be found to be due and payable to the party of the first part from the South Park Commissioners for the lands conveyed and procured to be to them by said Phillips involved in said suit, wherein said South Park Commissioners are complainants, as may be sufficient to pay the said amount so agreed to be paid to said parties of the second part; and said party of the first part hereby authorizes said parties of the second part to receive said amount so assigned to them from the said South Park Commissioners, and to give all necessary receipts therefor, either as such assignees or as the attorneys for the said party of the first part; and it is further agreed and understood, that said notes shall, in any event, become due and payable as soon as the amount to be paid for said land by said South Park Commissioners shall be ascertained and determined."

In September, 1884, Hawley, one of the payees of the notes, assigned his interest in the same to said James K. Edsall.

The cause of the *South Park Comrs.* v. *Charles B. Phillips et al.* was heard in the circuit court during the month of July, 1884, and on the 9th day of January, 1885, a decree was entered therein, which provided, among other things, as follows:

"It is therefore ordered, adjudged and decreed, that the complainant, the South Park Commissioners, do pay into court the sum of $36,664, (being the contract price, at $800 per acre, for said $45\frac{83}{100}$ acres,) together with interest thereon at six per cent per annum, from August 27, A. D. 1870, to the date of such payment, after deducting from said total of principal and interest the amount hereinbefore found to have been paid by complainant to said Phillips, with interest at six per cent per annum on each of said payments from the date thereof to the date of such payments, to-wit:

| | | | | | |
|---|---|---|---|---|---|
| $300 | with interest at six per cent from | | | Dec. | 15, 1869. |
| 100 | " | " | " | Feb. | 4, 1870. |
| 450 | " | " | " | Apr. | 4, 1870. |
| 450 | " | " | " | Apr. | 6, 1870. |
| 215 | " | " | " | Apr. | 16, 1870. |
| 150 | " | " | " | Apr. | 12, 1870. |
| 500 | " | " | " | May | 15, 1870. |
| 250 | " | " | " | Sept. | 10, 1870. |
| 250 | " | " | " | Dec. | 14, 1874. |
| 250 | " | " | " | Mch. | 11, 1875. |
| 250 | " | " | " | July | 26, 1875. |
| 300 | " | " | . | " | Jan. 16, 1876. |
| 500 | " | " | " | July | 3, 1876. |
| 200 | " | " | " | Sept. | 26, 1876. |

—To be herein distributed according to the rights of the parties as herein found and decreed, and that upon such payment into court, the South Park Commissioners be discharged from further liability therefor, and that the title of said complainant in and to said north $45\frac{88}{100}$ acres of the east half of the south-west quarter of said section 13, upon such payment, be confirmed and established."

Shortly after the rendition of said decree, to-wit, on the 16th day of January, 1885, the appellees filed in the circuit court the supplemental bill or intervening petition which is now in question before us, against said Charles B. Phillips and the South Park Commissioners, asking that they, said appellees, be decreed to have a lien upon the fund due said Phillips from the park commissioners, for the payment and satisfaction of the amount due or to become due upon the aforesaid notes and contract, and for other relief. On the 19th of October, 1885, said Phillips was ruled to answer the supplemental bill within twenty days, but his answer thereto was not filed until May 10, 1887. Three days thereafter, on May 13, 1887, the cause, and matters involved in the supplemental bill, and the issues joined thereon, were referred to a master

35—127 ILL.

in chancery to take and report the evidence, with his conclusions thereon.    Thereafter, on May 26, 1887, said Phillips entered a motion for a trial by jury of the issues of fact in the cause, and to set aside the order of reference to the master, which motion was denied by the court.    On June 28, 1887, the master made a report of the evidence and his findings, and his conclusion was, that the material allegations of the supplemental bill were supported by the proofs, and that the prayer of said bill should be granted.    Phillips filed exceptions to the master's report on July 6, 1887, and on the 12th of July, 1887, he, by leave of the court, filed a cross-bill against appellees and John B. Hawley.    On the 26th of July, 1887, the cause of said supplemental bill was heard by the court, and the exceptions to the master's report were overruled, and said report in all things approved and confirmed, and a decree rendered in favor of appellees, against Phillips, for $5763 and costs, and the same ordered to be paid out of the fund in the custody of the court.    This decree was afterward, upon the appeal of said Phillips, affirmed in the Appellate Court for the First District, and the cause is now brought to this court by him by a further appeal.    Various objections are urged to the decree, and the more important of these will be briefly considered.

The claim is made that the court of chancery had no jurisdiction to entertain the supplemental bill or intervening petition of appellees, and that there was a full and adequate remedy at law.    The bill or petition of appellees was not, as seems to be assumed, a suit by attorneys against their client for the purpose of recovering the value of professional services rendered, and therefore, in substance, for the recovery of unliquidated damages, nor did it involve any question of an implied lien for fees, in their favor, upon the decree or judgment recovered for their client against the park commissioners. The theory of the supplemental bill was, that appellant had, by written contract, assigned to appellees and Hawley a por-

tion of the amount due and owing to him from the South Park Commissioners, and that the whole amount so due and owing him was a fund in the hands and under the control of the court, and that such assignment should be protected and enforced by the court, and a decree entered preserving the equitable lien which appellees had, under the contract, upon such fund. A part of a debt or chose in action is not assignable at law, but can be assigned in equity, and in such case a trust will be created in favor of the equitable assignee on the fund, and will constitute an equitable lien upon it. Story's Eq. Jur. sec. 1044; *Pomeroy* v. *Manhattan Life Ins. Co.* 40 Ill. 398. It is clear, not only that appellees had no remedy at law to enforce the assignment contained in the contract, but also that the jurisdiction of the chancery court, a trust being involved, was unquestionable.

These same considerations also dispose of two other objections urged by appellant against the decree. One of these is the claim that the bill was prematurely filed, and the other, the refusal of the court to submit the issues of fact in the case to a jury. The bill being to enforce an equitable interest in a fund which was under the control of the court, it was entirely proper to file it either before or after the decree in the principal case of *South Park Commissioners* v. *Phillips et al.*, and wholly irrespective of the question whether the debt secured by the notes and written contract was due or not. The exhibition of a bill or petition is proper at any time after the assignment, in order to give the court notice of the rights of the assignee in a fund which is the subject of pending litigation, and if the rule were otherwise than as stated, the rights of such assignee would be extremely precarious. So, also, the case being one which was properly cognizable, in equity, under one of the original heads of chancery jurisdiction, it was entirely discretionary with the court whether it would or would not submit any issue or issues of fact to a jury; and had such submission been made, the verdict rendered would

have been simply advisory, and might have been disregarded by the court. The motion for a jury trial was not made until some two weeks after the reference to the master, and after a considerable portion of the testimony had been taken, and was not for the submission of any particular issue or issues, but for a trial by jury of all the issues of fact made by the pleadings. The action of the court in refusing the application was eminently proper. Rev. Stat. chap. 22, sec. 40.

It is urged it was error to deny the motion of appellant to continue the cause until answer was made to his cross-bill, and the cause was at issue thereon. This cross-bill was not filed until July 12, 1887, and the motion was entered July 15, 1887. The master had made his report of the evidence, and his conclusions thereon, on the 28th of June, 1887, and a motion was pending for the confirmation of such report and the entry of a decree in accordance with its recommendations. The matters and things alleged in the cross-bill were, with a few exceptions, contained in the answer to the bill of appellees, and the facts alleged in the cross-bill, and not stated in the answer, had transpired and were known to appellant prior to the filing of said answer. If the cross-bill was proper and was necessary, no good reason is suggested why it was not filed with said answer. The cross-bill made a new party to the suit, who was not before the court, by the service of process or otherwise, and to have waived the original bill until the cross-bill was ripe for hearing, would have caused vexatious delay. The filing of a cross-bill does not necessarily stay the hearing upon the original bill, and when there has been a want of diligence on the part of a defendant in chancery, and the original cause is ready for hearing, he can not interpose a cross-bill, and insist, as a matter of right, upon the postponement of the hearing of the original cause. *Wiley* v. *Platter*, 17 Ill. 538.

It is suggested, that as amendments were made to the bill at the hearing, it opened up the case, and appellant was en-

titled to file a new answer, and with it a cross-bill, and that the original bill thereby lost its precedence over the cross-bill. The two amendments then made were unimportant, and were the mere statement of facts already proven by appellant himself before the master—*i. e.*, that Mr. Hawley had resided in Nebraska since the summer of 1886, and that the South Park Commissioners had, on the 23d day of April, 1887, paid into court the money due Phillips under the decree of January 9, 1885 ; and, moreover, the latter fact was already within the judicial knowledge of the court from the record of the principal cause in which the supplemental bill was filed. These amendments did not and could not necessitate a new answer or the filing of a cross-bill. The cross-bill was filed July 12, and the amendments were not made until July 26, and appellant then made no offer to amend his pleadings or file new pleadings, and did not renew his motion, which had been overruled on July 15, to continue the cause until the cross-bill was ready for hearing. We find no error in the ruling of the court upon the motion for continuance.

The principal contention of appellant is, that appellees and John B. Hawley did not faithfully represent and defend his interests, as required by the contract of June 12, 1884, in the suits and causes mentioned in said contract. The master, in his report, and the court, in its decree, each finds, in substance, that appellees and said Hawley had faithfully, and with due care, skill and diligence, complied with and performed their part of said contract. Six suits are mentioned in the contract, and three of these were satisfactorily ended within a short time after the contract was made. The cause of *Elizabeth Ann Phillips* v. *Kerr, Charles B. Phillips et al.* is not yet disposed of, but it was heard in respect to the matters in controversy between said Elizabeth Ann Phillips and the Kerrs, in February, 1886, and at the time of the hearing of this case was still held under advisement in the trial court. It appears from the evidence, that nothing further can be done in said

suit in behalf of appellant, without said Elizabeth Ann Phillips is successful in her controversy with the Kerrs, but that in that event he may be entitled to relief upon his cross-bill against her. It further appears that appellees and said Hawley have thus far done all required of them in said cause to advance the interests of their client, and are ready and willing to perform all services in said litigation that may be hereafter necessary in order to protect such interests.

It is objected, that in the suit of *Williams, for use of Blatchford* v. *Phillips,* which was finally disposed of in July, 1885, there was, in two respects, a failure on the part of appellees and said Hawley to perform their duty under the contract of June 12, 1884,—that Hawley did not appear in court and take part in the trial of said cause, and that appellees failed to procure a bill of exceptions to be signed and filed within the time limited therefor by the order of the court. Appellant was entitled, under the contract, to the services of all three of the attorneys in each one of the suits mentioned therein. But, it will be noted, the contract was to act as his attorneys and counsel, and do all things deemed necessary to faithfully represent and defend his interests in said cases, according to their best judgment and ability. The spirit of the contract did not require that all three of the attorneys should be present in court when each and every step was taken in each and every one of the six cases, unless in their best judgment such presence was necessary or advisable. The conduct of all the parties to the contract in regard to the trial and proceedings, in this and the other suits, clearly indicates it was understood by them as is above suggested. It appears that all three of the attorneys acted together in the case in question, and that appellees, after consultation with Mr. Hawley in regard to the case, attended to the trial, and that no complaint was made, at the time, that they did not all three participate therein. The case of *Morgan* v. *Roberts,* 38 Ill. 65, cited by appellant, is not here in point. In that case there was an abandonment

of the suit and of the contract by one of the counsel employed, while here no such abandonment is shown by the evidence.

In respect to the matter of the bill of exceptions, it is to be noted that under the contract appellant had the right to employ other attorneys to act in conjunction with appellees and Mr. Hawley, and that he did retain Mr. Sherburne to assist in the trial of the case. The evidence conclusively shows that after the motion for a new trial was overruled, appellees offered to prepare a bill of exceptions, but that appellant objected to their having anything to do with it, and insisted it should be prepared and attended to by Mr. Sherburne alone. Through some misunderstanding with the presiding judge and opposing counsel, the bill of exceptions was not signed and sealed. It is manifest that it was through no fault of appellees or of Mr. Hawley that a bill of exceptions was not filed within the time allowed. The acts and conduct of appellant himself having prevented appellees from taking a bill of exceptions, he is, in equity, estopped from complaining of their failure so to do.

It is urged, that in the case of *South Park Comrs.* v. *Phillips et al.* reported in 119 Ill. 626, appellees and said Hawley failed, in several respects, to comply with their duty under the contract. We have carefully examined the evidence in the record, and fail to find proof that there was a breach of professional duty on their part in failing to charge, in the answer of Phillips, that the contract of December 10, 1869, was obtained by fraud, or that any facts were stated to them or data furnished them upon which they could properly have made such a charge, or that the want of such charge worked the rejection of any testimony, or injuriously affected the rights of appellant.

In view of the fact that the park commissioners, on the 27th of August, 1870, took possession of the $45\frac{88}{100}$ acres of land which was found to belong to appellant, the trial court allowed him interest from that date on the $800 per acre to be paid therefor, and at the same time gave the commissioners credit for the several payments they had made to appellant on the

contract, with like interest thereon from the dates of such respective payments, and directed that all the computations of interest should be made to the date of the payment into court by the commissioners, of the contract price and interest. It is claimed that appellees and Hawley were derelict in duty, in that they did not procure a decree for a sum in gross, composed of the principal of $36,664, and interest computed thereon at six per cent per annum, from August 27, 1870, to the date of entering the decree, less the credits due the commissioners, and that by their failure to do so, appellant lost a large amount of interest upon interest which would have accrued upon the decree if properly entered between the date of such entry, January 9, 1885, and the date of payment, April 23, 1887. There might be force in this point were it not for the fact that the possession taken by the commissioners on August 27, 1870, was not, as to appellant, either tortious or under the law of eminent domain, but was under and in pursuance of the contract of December 10, 1869, and by the terms of that contract, and under the proofs, the compensation payable to him was not due until the title to the land was freed from all adverse claims by the final judgment, in 1882, of the Supreme Court of the United States, in the case of *Kerr* v. *South Park Commissioners and Phillips.* It would seem, then, the decree was, in respect to the matter under consideration, very favorable to appellant,—that by it he was allowed interest upon the $36,664 for a period of between eleven and twelve years, before the money was due under his contract, and in the absence of any provision therein for interest. Clearly, it would not have been advisable in his solicitors to object to the decree proposed by the court on the ground it did not afford him a more liberal allowance of interest.

The other objections made to the manner in which appellees and Hawley attended to the interests of their client in the *South Park Comrs. case,* do not seem to require special notice. Suffice it to say, we do not regard them as substantial or tenable.

It is insisted, that under the contract of June 12, 1884, the $5000 to be paid appellees and Hawley did not draw interest until April 23, 1887,—the time the money was paid into court by the commissioners,—and that the action of the court in allowing interest on said sum from the date of the entry of the decree of January 9, 1885, was erroneous. It was agreed in the contract "that said notes shall, in any event, become due and payable as soon as the amount to be paid for said land by said South Park Commissioners shall be ascertained and determined." The two matters in controversy in the South Park Commissioners' suit, as between them and appellant, were, the ascertainment of the quantity of land he owned and was entitled to be paid for, and the question whether he was to be paid $800 per acre as the value of the land. The decree settled these questions, and determined the rights of all the parties to the litigation. The decree did not, as would have been the proper and better practice, make the computation, and state in words and figures the amount of principal and interest the commissioners were decreed to pay for the portion of the land awarded to appellant. It did, however, find the number of acres awarded to him ($45\frac{83}{100}$), the price per acre ($800), the total amount of the contract price ($36,664), and fixed the date (August 27, 1870,) from which interest at six per cent per annum should be computed thereon up to the date of payment; and it also found the amounts and dates of the several payments made on the land, and directed that said payments, with interest at six per cent per annum on each of such payments, from the date thereof to the date of the payment of the decree, should be deducted from said total of principal and interest required to be paid for the land. The decree contained all the necessary data from which, by mere computation, the exact amount to be paid for the land could be calculated, and in the nature of things there could be but one result. That is sufficiently certain which can be made certain. In our opinion, the amount which was to be paid appellant

for the land by the South Park Commissioners, was, within the import and meaning of the contract of June 12, 1884, ascertained and determined by the decree of January 9, 1885, and the $5000 then became due and payable, and, under the statute, bore six per cent interest after that date.

We find no manifest error in the decree or in the record, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAILEY, having heard this case in the Appellate Court, took no part in its decision here.