MRS. JENNIE KITHCART v. JESSE R. KITHCART and the WABASH RAILWAY COMPANY, Garnishee, Appellant.

**Assignment of causes of action for personal injury:** SUFFICIENCY:
1 NOTICE. A claim for personal injury, or a part thereof, is assignable, whether sounding in tort or based upon contract; and after notice of the assignment the debtor is bound thereby.
   In this action a husband who had a suit pending for personal injury was sued for divorce, attachment issued and his debtor was garnished in favor of the wife. Pending the divorce suit the husband and wife agreed that she should have as permanent alimony a portion of the amount received from his debtor, and the stipulation was carried into the decree of divorce, which established a lien therefor on any amount received by the husband. *Held,* that the stipulation and decree constituted an assignment to the wife of her agreed interest in the husband's claim for damages, of which the debtor was bound to take notice, and any settlement thereafter made was at the debtor's peril.

**Judgment liens:** NOTICE: EFFECT. While a judgment is not ordin-
2 arily a lien on personalty until levy thereon under execution, still a court of equity may by decree create and establish such a lien, and all persons having actual notice thereof are bound thereby.

*Appeal from Wright District Court.*—HON. ROBERT M. WRIGHT, Judge.

THURSDAY, JANUARY 20, 1910.

IN a supplementary proceeding to compel the Wabash Railroad Company, garnishee, to pay to plaintiff a specified part of a sum of money which had been paid by it to defendant in settlement of a claim for damages on account of personal injuries, the court rendered judgment for the plaintiff as against said garnishee, and the garnishee appeals.—*Affirmed.*

*Hewitt & Wright,* for appellant.

*Sylvester Flynn* and *J. W. Henneberry,* for appellee.

DEEMER, C. J.—In 1903 plaintiff instituted an action against defendant for divorce and alimony, and in that action the issuance of a writ of attachment against the property of the defendant was authorized by the court. Under this writ of attachment notice of garnishment was served upon the Wabash Railroad Company, requiring it not to pay any debt due or thereafter to become due by it to said defendant. The garnishee answered that it had been served with an original notice of an action by this defendant against it to recover damages on account of personal injuries alleged to have been received while in defendant's service, and that said suit had been removed to the Circuit Court of the United States, where it was then pending. This answer of the garnishee was controverted by the plaintiff, who alleged that the garnishee was indebted to the defendant for personal injuries in the sum of $50,000, and judgment was asked against the garnishee for whatever amount might be awarded her in the action for a divorce. Thereupon a stipulation was entered into between the plain-

tiff and the defendant in the divorce suit, wherein it was
agreed that as it might be a long time before the action
for damages brought by defendant against the garnishee
could be settled, tried, or otherwise disposed of, the plain-
tiff should receive as permanent alimony one-fourth of the
defendant's share of whatever sum he might obtain from
said garnishee, whether by trial or compromise (defend-
ant's share being the amount recovered or paid less attor-
ney's fees, which should not exceed fifty percent), and
that any decree which should be rendered in favor of plain-
tiff for alimony should be made a lien upon all money in the
hands of the garnishee due or to become due the defend-
ant on his said claim, and that plaintiff should have judg-
ment against defendant for costs.    In pursuance of this
stipulation a decree was entered in the divorce proceeding,
giving to plaintiff an absolute divorce from defendant and
judgment by way of alimony for one-eighth of the entire
amount that defendant should recover, receive, or obtain
from the Wabash Railroad Company in his action for per-
sonal injuries then pending in the federal court, and such
judgment was declared to be a lien from the date of the
garnishment notice upon any judgment which defendant
might obtain in said suit and upon any amount that might
be agreed upon between defendant and said company in
settlement of said claim.    It was provided further that
upon the rendition of judgment against, or upon settlement
with, said railroad company and in favor of the plaintiff
for one-eighth of the amount of such judgment, or of the
total amount agreed upon in settlement of said suit should
be rendered against the garnishee.    By provision of this
decree the railroad company, as garnishee, was to be dis-
charged in the event that the defendant failed to recover
anything either in settlement or on trial of this said action.
This decree was rendered in 1905, and a certified copy
thereof was served upon the Wabash Railroad Company
as garnishee.

In April, 1908, the plaintiff filed in her original action a supplementary petition, reciting the rendition of the decree and the service of a copy thereof as above stated, and alleged that on March 30, 1908, the Wabash Railroad Company, garnishee, effected a settlement with defendant, whereby it paid to and on behalf of said defendant about $8,000 in full settlement and discharge of the claim which said defendant had against said company for personal injuries, and demanded judgment against the railroad company for a portion of that amount in accordance with the terms of the previous decree. To this supplementary petition the railroad company interposed an answer admitting the settlement, but denying the validity of the decree and conditional judgment, and denying any indebtedness to the plaintiff. It also asked that it be discharged from any and all liability under the garnishment proceeding. The issues thus raised, were tried upon a stipulation of facts, from which it appeared that a settlement was made by the railroad company with the defendant Jesse R. Kithcart, in pursuance of which there was paid to him the sum of $4,125 and paid to his attorneys the sum of $1,750, said attorneys having previously filed an attorney's lien for their services, and further that, preceding such settlement, a judgment had been recovered by said Kithcart against the railroad company in the United States Circuit Court for $8,000, which upon writ of error to the Circuit Court of Appeals was reversed, and that after a mandate had issued to the trial court the case was again noticed for trial, and the plaintiff therein filed an amendment to his petition, wherein he stated more fully the ground upon which he claimed the right to recover. Under these stipulated facts the trial court, hearing the case standing before it on plaintiff's supplemental petition and the answer of the railroad company thereto, entered a decree finding the facts as above recited and giving judgment in favor of

plaintiff against the defendant and the railroad company, garnishee, for the sum of $734.37 and costs.

I.    In view of our conclusion upon the issues tendered by plaintiff in her supplementary petition, it is not necessary to consider the effect of a garnishment.    Indeed, there is much ground for saying that, if the action were bottomed upon the garnishment alone, it could not be sustained.    It appears that, as already stated, plaintiff brought an action for divorce against her husband, Jesse R. Kithcart, one of the defendants herein, in which action she asked for an allowance of alimony.    At the time of the commencement of that suit and until the final settlement with the defendant railway company, plaintiff's husband held a claim or cause of action sounding in tort, it is true, against the defendant railway company.    In the divorce action it was agreed that plaintiff therein should have and receive as and for her permanent alimony one-fourth of whatever sum defendant, her husband, might obtain from the railway company whether upon trial or by way of compromise; and that any decree which should be rendered for alimony should be made a lien upon all money in the hands of the railway company due or to become due the defendant husband on his claim against the company.    Pursuant to the stipulation a decree was granted, giving plaintiff a divorce and awarding her one-eighth of the entire amount that her husband should recover, receive, or obtain from the railway company in his action for personal injuries, and the judgment was declared a lien upon any judgment which the husband might obtain in his suit or upon any amount which might be agreed upon between him and the company in settlement of the claim.    Provision was also made for a final decree against the railway company in the event judgment went against it or in case of settlement, which decree was to be in favor of plaintiff and against the railway company for one-eighth of the amount of the judgment, or of the amount agreed upon by way of

settlement. This decree was rendered in the year 1905, and a certified copy thereof was immediately served upon the defendant railway company. Notwithstanding these agreements and decrees, the railway company, in the year 1908, settled with plaintiff's husband, paying no attention to her claims or to her decree, and now claims that it is fully released and discharged, and that plaintiff has no claim against it.

One holding a claim against a railway company, no matter whether sounding in tort or based upon contract, may, in this state, assign the same or a part thereof, and after notice of such assignment to the railway company it is bound thereby, and must respect such assignment. At common law claims growing out of tort could not be assigned; but in this jurisdiction all things in action are assignable. Code, sections 3044, 3461. Under these sections it has been held that liability for a tort may be sold, transferred, or assigned so as to give the holder priority over an attaching creditor of the assignor. *Weire v. City,* 11 Iowa, 49. In that case Wright, J., speaking for the court, said:

1. ASSIGNMENT OF CAUSES OF ACTION FOR PERSONAL INJURY: sufficiency: notice.

But it is, in the second place, contended that the liability of the city was for a tort, and that this could not be assigned. This was true at common law, so far at least that the right of action for such injury could not be transferred. What change the Code has made in this respect we need not stop to inquire, for the reason that we entertain no doubt but that such a liability may be sold or transferred, if *bona fide,* so as to give the holder a priority over an attaching creditor of the transferer. It may be sold just as a horse or any other property may be, and the title pass as completely. And, whether the transferee could sue in his own name or not, the vendor still could not deny his title, nor could the creditors of such vendor. Not only so, but there was an action pending at the time of this assignment, and the transfer related to and included the verdict and judgment as well as the mere cause of ac-

tion. That this might be done in the absence of fraud so as to give the assignee or vendeé a good title to the judgment, and a right to control it as his own property, we entertain no doubt. *Robinson v. Weeks,* 6 How. Prac. [N. Y.] 161; *Hodgman v. Western R. Corp.,* 7 How. Prac. 494; *Purple v. Hudson R. R. Co.,* 4 Duer (N. Y.) 78; *McKee v. Judd,* 12 N. Y. 2 Ker. 622 (64 Am. Dec. 515). So far as the plaintiff was concerned, notice of the assignment was only necessary to protect the assignee against the subsequent acts of the assignors, as their subsequent sale or transfer or the like. The Code has not narrowed the assignability of claims. Whatever could be assigned before may still be, and some claims are made negotiable which before were not. In addition to this, a right of action is given to the assignee of some claims in his own name which did not exist at common law. It is by no means true that only those instruments or claims which are specifically named in chapter fifty-eight can be assigned. To mention none other, a judgment is not mentioned, and yet it has been held that it may be assigned so as to give the holder a right to sue thereon in his own name. *Edmonds v. Montgomery & Shaw,* 1 Iowa, 143.

See, also, *Gray v. McCallister,* 50 Iowa, 497-502; *Clews v. Traer,* 57 Iowa, 459-466; *Vimont v. Railway Co.,* 64 Iowa, 513-520; *Vimont v. Railway Co.,* 69 Iowa, 296-299.

The stipulation entered into by the defendant husband with plaintiff, his wife, as a basis for the decree as to alimony, amounted to a voluntary assignment of one-eighth of the cause of action held by the husband against the railway company. That defendant had notice of this assignment appears from the record, and it had this notice before it settled with plaintiff's husband. After notice it could not pay to the assignor in disregard of plaintiff's claim. But whether this be true or not, the decree rendered in the divorce case, in so far as it relates to alimony, undoubtedly transferred to plaintiff one-eighth of the amount which the husband might recover or which might be paid him in settlement of his claim against the railway

company. This decree was entered, as shown upon its face, by and with the consent of the husband; but, had it been entered without his consent and against his wishes, the legal effect would be the same. · The decree transferred one-eighth of the claim to the plaintiff and made her claim a lien upon the amount recovered or paid in settlement of the cause of action held by the husband. A copy of this decree was served upon the railway company, so that it had actual notice thereof. That this decree as to alimony amounted to a transfer or assignment of one-eighth of the claim from the defendant husband to his wife is, as we think, perfectly clear; and, as defendant railway company had actual notice thereof, it was in position to protect itself, and it can not now be heard to urge in defense that it paid the entire claim to the assignor. There is no need to discuss the question of *lis pendens,* for defendant railway company had actual notice, both of the stipulation and of the provision of the decree before it settled with the defendant husband. It is also entirely immaterial that it was not made a party to the divorce proceedings, or that the garnishment was of no validity. It could not, no doubt, be held as a garnishee; but, if the decree amounted to an assignment of part of the claim or cause of action as between plaintiff and her husband, it is not necessary that the railway company should have been made a party to the divorce proceedings. Notice of the assignment, whether it be held voluntary or involuntary, is all that is required.

In support of these conclusions, we quote the following from Freeman on Judgments (4th Ed.), sections 425, 526:

It is no valid objection to an assignment that at the date of its execution no judgment existed. 'The assignment carries the whole title to the subject-matter of the action, and, of course, to the judgment, when perfected. As between the parties to the assignment, clearly the whole right passes to the assignee, and the defendant, the moment the

judgment is perfected, becomes the debtor of the assignee, and not of the nominal plaintiff.' An assignment of a judgment not yet recovered need not purport to be an assignment of a judgment. Every transfer of an assignable cause of action *pendente lite* has the effect of assigning any judgment subsequently recovered thereon. ' . . . We find the rule laid down in some decisions, in general terms, that 'secret assignments can not be allowed to entrap innocent parties.' This rule, though manifestly of a very equitable character, is, we think, hardly sustained by the reported decisions. If it is strictly true in any case, it is in regard to the effect of an assignment without notice upon the rights of the judgment debtor. It is undoubtedly true that if the assignee gives notice of the change of ownership in the judgment, and permits the assignor to control the execution, the judgment debtor will be protected in all payments which he may make to the apparent judgment creditor. While it is said that notice of an assignment need not be given directly to the judgment debtor, yet there is no doubt that he is protected in all payments made to the judgment creditor until he has either actual notice of an assignment, or notice of such facts as put him upon inquiry, and are therefore equivalent to actual notice. . . . One not a party to a judgment who holds lands subject to the lien thereof is protected in payments made to secure a release of such lien from an assignment of the judgment of which he had no notice. On the other hand, the assignee will be protected from all acts of the parties after notice of the transfer.

In Ohio and in Illinois it has been held that a judgment debtor can not compromise with an assignor after notice of the assignment and thus defeat the claim of the assignee. See *Pittsburg Co. v. Volkert,* 58 Ohio St. 362 (50 N. E. 924). From this case we quote the following:

The same principle would apply to the case of an assignment of part of a debt. In each case a trust would be created in favor of the equitable assignee on the fund, and would constitute an equitable lien upon it. By other of the authorities such transfer is said to create an inter-

est in the fund in the nature of an equitable property. By others it is denominated an 'equitable assignment.' But, whatever term is applied to it by way of description, the result reached is to give to the assignee a property right in the thing assigned—a right which is cognizable by and enforceable in a court of equity. Authorities in support of the proposition here advanced are so abundant that one is at a loss which to select. The following will be found, as we think, conclusive upon the subject: *Superintendent, etc., of Public Schools v. Heath,* 15 N. J. Eq. 22; *Field v. Mayor, etc.,* 6 N. Y. 179 (57 Am. Dec. 435); *People v. Comptroller,* 77 N. Y. 45; *Whittemore v. Oil Co.,* 124 N. Y. 565 (27 N. E. 244, 21 Am. St. Rep. 708); *Grain v. Aldrich,* 38 Cal. 514 (99 Am. Dec. 423); *Bank v. Kimberlands,* 16 W. Va. 555; *Phillips v. Edsall,* 127 Ill. 535 (20 N. E. 801); *Bank v. Yardley,* 165 U. S. 634 (17 Sup. Ct. 439, 41 L. E. 855); *Price v. The Elm Bank* [D. C.] 72 Fed. 610; *Bank v. McLoon,* 73 Me. 498 (40 Am. Rep. 388); 2 Freem. Judgm., section 426. See, also, *Stanbery v. Smythe,* 13 Ohio St. 501; *Gamble v. Carlisle,* 3 Ohio N. P. 279 (6 S. & C. P. Dec. 48), opinion by Smith, J., and authorities there cited. . . . The right of the debtor to compromise with his creditor is not disputed, but it is not a right of so high a character as to override every other right which courts respect. The books are full of cases holding that where a debt has been assigned, and a debtor has knowledge of the assignment, any attempt to settle the case with the assignor, and ignore the claims of the assignee, will be held to be futile so far as the rights of the latter are concerned. *Harris Co. v. Campbell* (Tex. Sup.) 2 Am. St. Rep. 472, and note; s. c. (68 Tex. 22, 3 S. W. 243); *Field v. Mayor, etc., supra; Brill v. Tuttle,* 81 N. Y. 454 (37 Am. Rep. 515); *McDaniel v. Maxwell,* 21 Or. 202 (27 Pac. 952, 28 Am. St. Rep. 740); *Schilling v. Mullen,* 55 Minn. 122 (56 N. W. 586, 43 Am. St. Rep. 475); 3 Pomeroy, Equity Jurisprudence, section 1280; *Hughes v. Trahern,* 64 Ill. 48; *Ullmann v. Kline,* 87 Ill. 268; *Stoddard v. Benton,* 6 Colo. 508. . . . It thus appears that the right of a debtor to compromise means only that his right to compromise will be preserved as respects his dealing with the real parties in interest, of whose

claims he has knowledge; and, if this be so, the release by one of the parties in interest can not affect the portion of the debt belonging to another. As held in *Upjohn v. Ewing*, 2 Ohio St. 13: 'One or more of several joint creditors, between whom no partnership exists, can not release the common debtor, so as to conclude their co-creditors who do not assent to such release.' The duty of the court to protect the interest of an assignee of a chose in action is elsewhere in the opinion recognized in these words: 'It is by no means our intention to shake the well-established principle that a court of law will protect the interest of the *bona fide* assignee of a chose in action, after notice to the debtor of the assignment. The rule is convenient, and necessary in the administration of justice, to secure parties against fraud and circumvention.' How could parties be secured against 'circumvention' if the rule were established that, although a judgment debtor have full knowledge of an assignment or part of a judgment to a third person, yet he may, without the knowledge, and behind the back of that assignee, negotiate an alleged compromise with the original creditor which will discharge the entire debt? It is confidently submitted that neither by any process of right reasoning, nor upon any respectable authority, can such a proposition be maintained.

These quotations from that opinion are eminently sound, and, if applied to the facts now before us, should result in an affirmance of the judgment.

Moreover, it was competent for the court to declare a lien in the divorce proceeding upon the money which should eventually be found due upon trial or be paid to the defendant Kithcart in settlement of his claim. This decree may not in and of itself have been binding upon the railway company because it was not a party thereto, and perhaps the doctrine of *lis pendens* does not apply. But it was given actual notice of the decree, and, as it stood indifferent as between plaintiff and her husband, the decree, in so far as it attempted to dispose of the funds between the wife and husband and specifically created a lien upon the

2. JUDGMENT LIENS: notice: effect.

fund, was binding upon the railway company after due notice of the provision thereof. Ordinarily a judgment is not a lien upon choses in action or any other form of personalty until levy thereon by execution; but a decree in chancery may in terms create and establish liens upon both personal and real estate, and all persons having notice of such liens are bound thereby. As to real estate the prevailing rule of *lis pendens* applies. Whether this rule also applies to personalty there is no need now to determine, for the railway company have actual notice of the decree. Although the case of *Smith v. Railroad*, 56 Iowa, 720, has reference to an attorney's lien, much that is said therein may be considered as applicable to this branch of the present discussion.

The judgment against the defendant railway is correct, and it is, *affirmed.*